```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF TEXAS
                      FORT WORTH DIVISION

TILON LASHON CARTER,           §
                               §
        Petitioner,            §
                               §
V.                             §      No. 4:10-CV-969-Y
                               §
WILLIAM STEPHENS, Director,    §      (Death Penalty Case)
Texas Department of Criminal   §
Justice, Correctional          §
Institutions Division,         §
                               §
        Respondent.            §
```

**MEMORANDUM OPINION AND ORDER DENYING RELIEF**

Petitioner Tilon Lashon Carter has filed a petition for a writ of habeas corpus (Pet., ECF No. 11) and brief in support (Pet. Br., ECF No. 12). Respondent William Stephens has filed an answer (Ans., ECF No. 17). Carter has filed his reply to the answer (Reply, ECF No. 20). Because the state court's denial of Carter's claims has not been shown to be unreasonable or contrary to clearly established federal law, the petition will be denied.

**I**

On April 28, 2004, Carter and his girlfriend, Leketha Allen, broke into the home of James Tomlin, 89, and bound him with duct tape on his ankles, hands and face while they robbed his house. Tomlin died of asphyxiation.

Carter was convicted and sentenced to death for the capital murder of Tomlin on November 16, 2006, in the 371st Judicial District Court, Tarrant County, Texas. The Texas Court of Criminal

Appeals ("CCA") affirmed his death sentence on January 14, 2009. (*Carter v. State*, No. AP-75,603, 2009 WL 81328 (Tex. Crim. App. 2009).)  Carter's petition for a writ of certiorari was denied on October 5, 2009.  (*Carter v. Texas*, 558 U.S. 830 (2009).)

On September 5, 2008, Carter filed an application for habeas-corpus relief in the state district court.  (Vol. 1, State Habeas Clerk's Record, "SHCR", at 2.)  After an evidentiary hearing, the trial court entered findings to deny relief on October 8, 2010 (2 SHCR 139-54), which were adopted by the CCA on December 15, 2010. (*Ex parte Carter*, No. WR-70,722-01, 2010 WL 5232998 (Tex. Crim. App. 2010).)

## II

Carter makes three claims for habeas relief: (1) He was denied the effective assistance of counsel under the Sixth Amendment because his trial attorneys failed timely to contact, confer with, and produce in court the testimony of a forensic pathologist to testify regarding the cause and manner of the victim's death (Pet. Br. at 1-18); (2) The trial court's failure to require proof beyond a reasonable doubt at the punishment phase that no mitigating circumstances existed to warrant a sentence of life imprisonment rather than death violated Carter's rights under the Fifth, Sixth, and Fourteenth Amendments (Pet. Br. at 18-31); and (3) the Texas rule that the jury may not return a verdict in the defendant's favor on punishment phase special issues unless at least ten jurors

2

agree, and that the jury not be informed of the consequences of failing to return a verdict, combined to violate Carter's rights under the Eighth and Fourteenth Amendments (Pet. Br. at 32-38).

Regarding all three claims, Respondent asserts that Carter's claims lack merit and that he cannot demonstrate that the state court's resolution is unreasonable. (Ans. at 21-68.) Regarding the second and third claims, Respondent also asserts that they are barred by the nonretroactivity doctrine of *Teague v. Lane,* 489 U.S. 288 (1989). (Ans. at 1, 59-61, 65-66.)

### III

The Supreme Court consistently emphasizes the deference that federal courts must provide to state-court adjudications of claims under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). If the state court denies the claim on the merits, a federal court may not grant relief unless it first determines that the claim was unreasonably adjudicated by the state court, as defined in § 2254(d):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in

>light of the evidence presented in the State court proceeding.

*Id.* The Supreme Court has described this as "a provision of law that some federal judges find too confining, but that all federal judges must obey." *White v. Woodall,* 134 S. Ct. 1697, 1701 (2014).

In the context of § 2254(d) analysis, "adjudicated on the merits" is a term of art referring to a state court's disposition of a case on substantive rather than procedural grounds. *Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997). Instead of authorizing habeas relief, this provision prevents federal courts from granting it to state prisoners on claims that were not first unreasonably denied by the state courts. Thus, the AEDPA limits rather than expands the availability of habeas relief. *See Fry v. Pliler*, 551 U.S. 112, 119 (2007); *Williams v. Taylor*, 529 U.S. 362, 412 (2000). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter,* 562 U.S. 86, 131 S. Ct. 770, 784 (2011). "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court rulings be given the benefit of the doubt.'" *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011) (internal citations omitted) (quoting *Richter*, 131 S.Ct. at 786, and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).

4

Under the "contrary to" clause, a federal court is not prohibited from granting federal habeas relief if the state court either arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decides a case differently from the United States Supreme Court on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. at 412-13; *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). Under the "unreasonable application" clause, a federal court is also not prohibited from granting federal habeas relief if the state court unreasonably applies the correct legal rule to the facts of a particular case. *See Williams*, 529 U.S. at 407. The Supreme Court has recently reaffirmed the high and difficult standard that must be met:

> Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. Rather, as a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*White v. Woodall,* 134 S. Ct. at 1702 (quotation marks and internal citations omitted).

Federal habeas relief is not available on a claim adjudicated on the merits by the state court unless the record before the state court first satisfies § 2254(d). "[E]vidence introduced in federal

5

court has no bearing on § 2254(d)(1) review. If a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Pinholster*, 131 S.Ct. at 1400. The evidence required under § 2254(d)(2) must show that the state-court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.*

**IV**

Carter claims that he was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution because his trial attorneys failed timely to contact, confer with, and produce in court the testimony of a forensic pathologist to testify regarding the cause and manner of the death of James Tomlin. (Pet. Br. at 6-18). Specifically, Carter complains that his trial counsel failed to offer expert testimony to contradict the opinion of the state's medical examiner that the victim had been killed deliberately by a human agent. (Pet. Br. at 8.)

Respondent asserts that Carter has not shown and cannot show that the state court's resolution of this claim is unreasonable. (Ans. at 21-46.)

6

## A. State Court Proceedings

The manner of death was an important issue at trial because it related to the specific intent necessary to prove capital murder.[1] Carter made statements to the police indicating that he intended to rob, but not kill, the victim. (State's Exh. 95, 97; Volume 40 of the Reporter's Record, "RR", at pages 107, 137, 139-44; 42 RR 44, 48-49, 62.) The State's pathologist, Dr. Nizam Peerwani, performed the autopsy and testified at trial that, while he was sure that the victim died of asphyxiation, he could not be certain of the exact mechanism that caused it. (41 RR 189, 191, 208, 216-17.) He testified that the manner in which the victim was restrained and the position that the body was found would be consistent with positional asphyxiation, but that marks on the inside of the victim's lips indicated an intentional smothering. (41 RR 169-73, 176-78, 187, 205, 208.)

The state habeas court ordered affidavits (Volume 2 of the State Habeas Clerk's Record, "SHCR", at pages 10-11), and eventually conducted an evidentiary hearing on this claim on October 13 & 15, 2009. (Volume 1 of the State Habeas Reporter's Record, "SHRR", at pages 4-5; 2 SHRR 3, 131-32; 3 SHRR 3, 168-69.) Following the hearing, the state habeas court made findings that differed from those submitted by either party.

---

[1]Most of every attorney's closing argument in the guilt/innocence stage focused on whether the evidence showed the specific intent to kill necessary to elevate murder to capital murder. (42 RR 34-77.)

7

The state habeas court found that trial counsel's performance was deficient in failing to promptly investigate the available experts in forensic pathology "[d]espite knowing early that intent would be the lynchpin of their case," but recommended that relief be denied because such deficiency did not result in prejudice to Carter. (2 SHCR 144.) The state court reasoned that even if trial counsel had investigated more promptly, the testimony of the available expert pathologist, Dr. Charles Harvey, "would not have benefitted the defense, so it would not have had a reasonable probability of changing the results of the proceedings." (2 SHCR 145.) The state court also found that trial counsel "made a reasonable, strategic decision not to call Dr. Harvey to testify at Applicant's trial after Dr. Harvey told the defense that he had reviewed everything, agreed with [the State's expert pathologist], and could not help the defense." (2 SHCR 143.) These findings and the recommendation to deny relief were adopted by the CCA.[2]

**B.  Legal Standard**

In addition to the high deference under the AEDPA, "[j]udicial scrutiny of counsel's performance must be highly deferential" under *Strickland v. Washington,* 466 U.S. 668, 689 (1984). To prove a Sixth Amendment claim of ineffective assistance of trial counsel,

---

[2]The CCA adopted all of the trial court's findings pertaining to this claim except for (1) two sentences regarding whether and how Carter's expert at the habeas-corpus hearing differed from the State's expert testimony at trial, and (2) one of the concluding paragraphs regarding whether trial counsel's decisions may be judged only by what they actually knew or also by what they should have known. *See Ex parte Carter,* No. WR-70722-01, 2010 WL 5232998, at *1.

a habeas petitioner must show that counsel's performance was deficient and that such deficient performance prejudiced the defense. *See id.* at 687.

> This two-pronged approach requires the defendant to demonstrate that counsel's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* The defendant must meet both prongs; otherwise, "it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

*Beatty v. Stephens,* 759 F.3d 455, 462-63 (5th Cir. 2014) (quoting *Strickland,* 466 U.S. at 687), *petition for cert. filed* Feb. 2, 2015 (No. 14-8291).

Under the first *Strickland* prong, the petitioner must show that counsel's representation "fell below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688; *Beatty,* 759 F.3d at 463. A petitioner must overcome a "strong presumption" that the representation fell "within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. Under the second prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

This Court's review is even more deferential when both standards of deference apply.

> Because this case arises under AEDPA, *Strickland* is not the only standard we must keep in mind. When a petitioner brings a *Strickland* claim under AEDPA, the "pivotal question" is not whether the petitioner was deprived of his right to counsel under the Sixth Amendment. Instead, "the question is whether the state court's application of the *Strickland* standard was unreasonable." Both the *Strickland* standard and AEDPA standard are "highly deferential," and "when the two apply in tandem, review is doubly so."

*Beatty,* 759 F.3d at 463 (quoting *Richter,* 131 S.Ct. at 785, 788) (internal citations omitted); *see also Pinholster,* 131 S. Ct. at 1392 ("Review here is thus 'doubly deferential' ... requiring a 'highly deferential' look at counsel's performance ... through § 2254(d)'s 'deferential lens.'").

## C. Analysis

The state court's denial of relief under the *Strickland* standard was not unreasonable. Its conclusion that trial counsel made a "reasonable, strategic decision" not to call Dr. Harvey to testify at trial was supported by the undisputed testimony that Dr. Harvey told the defense that he had reviewed everything, agreed with the State's expert pathologist, and could not help the defense. (2 SHCR 143; 2 SHRR 24, 30, 49, 57, 90-91, 93-95, 117, 119, 129; 3 SHRR 5, 17-18, 45-46, 160.)

At the evidentiary hearing in the state habeas proceedings, Dr. Harvey testified that he agreed with the findings of Dr. Peerwani, the State's expert pathologist, and that the death was a homicide caused by smothering with positional asphyxia. (2 SHRR 24, 65.) He only slightly differed with the State's expert

10

pathologist in that Dr. Harvey would have considered the victim's age and health problems as potentially greater contributing factors in the death, and Dr. Harvey saw indications that could possibly support a finding of manual strangulation. (2 SHRR 35-36, 61-62.)

Trial counsel testified that they would not have wanted to call an expert that would confirm the very expert testimony that they were trying to dispute: that the victim was intentionally smothered. Lead counsel testified,

> I didn't want the jury to hear from a second doctor saying that--basically that Dr. Peerwani's testimony was that there was evidence of an intentional act of smothering because the--that takes it away from the hog-tying accidental asphyxia cause of death to an intentional act. I thought we had made some points during cross-examination that the possibility of cause of death was still asphyxia, and so it becomes an issue of was there evidence of intentional smothering or not, because ... that would get us to the intentional act of capital murder ... .

(2 SHRR 91.) Similarly, co-counsel testified,

> When the expert witness tells you that he's not going to be able to help you or contradict the medical examiner and the medical examiner's findings, then we didn't think it was a very good idea to go back and reinforce the State's testimony, so we did not call him.

(3 SHRR 53.) Dr. Harvey's testimony, therefore, would not have benefitted the defensive theory at trial.

Further, the trial court's finding that the absence of expert testimony did not prejudice the defense was supported by the same undisputed evidence. These were reasonable conclusions from the evidence presented in the state-court proceedings.

Therefore, the state-court findings have not been shown to be unreasonable or contrary to clearly established federal law under the AEDPA. Instead, its denial of relief is consistent with the record before this Court. Accordingly, Carter's first claim for relief is denied.

V

Carter also claims that he was denied his rights under the Fifth, Sixth, and Fourteenth Amendments by the trial court's failure to require proof beyond reasonable doubt at the punishment phase of Petitioner's capital murder trial that no mitigating circumstances existed to warrant a sentence of life imprisonment rather than death. (Pet. Br. at 6, 18-31.) Respondent asserts that the claim lacks merit, that Carter cannot demonstrate that the state court's resolution of it is unreasonable, and that it is barred by the nonretroactivity doctrine of *Teague,* 489 U.S. at 310. (Ans. at 46-60.)

Carter presented this claim to the state court in his fifth and sixth points of error in his direct appeal (1 CR 159; 2 CR 328-340; 9 RR 22-23; 50 RR 4), and the state court denied such complaints on the merits. (*Carter v. State,* 2009 WL 81328, at *5.) Carter also presented a portion of this claim in his fifteenth claim in postconviction habeas-corpus proceedings (1 SHCR 65-78), and the state court denied it as procedurally barred due to the

12

resolution of the claim on direct appeal (2 SHCR 152-53).  (*Ex parte Carter,* 2010 WL 5232998, at *1.)

Carter argues that a negative finding on the mitigation special issue increases his punishment to death and, therefore, falls within the rule announced in *Ring v. Arizona,* 536 U.S. 584, 585-86 (2002), and *Apprendi v. New Jersey,* 530 U.S, 466, 490 (2000), requiring it to be found by the jury beyond a reasonable doubt. (Pet. Br. at 18, 20.)  The United States Court of Appeals for the Fifth Circuit, however, has repeatedly rejected this argument.  *See Blue v. Thaler,* 665 F.3d 647, 669 (5th Cir. 2011); *Granados v. Quarterman,* 455 F.3d 529, 536-37 (5th Cir. 2006); *Rowell v. Dretke,* 398 F.3d 370, 379 (5th Cir. 2005).  The Court of Appeals has held that this special issue does not increase the sentence to death, but rather allows the jury to decrease a sentence from death.  *See Granados,* 455 F.3d at 537.

Carter acknowledges the binding circuit precedent against him on this issue, but attempts to distinguish those precedents as not addressing the precise arguments being made in these proceedings. (Pet. Br. at 24-25.)  There is no meaningful distinction in this case, however, and this Court is bound by such precedent.  *See Avila v. Quarterman,* 560 F.3d 299, 314-15 (5th Cir. 2009) (finding that the Court of Appeals was bound by precedent to reject petitioner's argument that the jury was required to find a lack of mitigating evidence beyond a reasonable doubt).

13

Respondent properly asserts that the expansion of *Ring* and *Apprendi* that Carter seeks would constitute a new rule of law that would be barred by the nonretroactivity doctrine of *Teague,* 489 U.S. at 310. (Ans. at 59-60.) Under this doctrine, federal courts are generally barred from applying new constitutional rules of criminal procedure retroactively on collateral review. *See Caspari v. Bohlen,* 510 U.S. 383, 389–90 (1994).

A "new rule" for *Teague* purposes is one that was not dictated by the precedent existing at the time the defendant's conviction became final. *See O'Dell v. Netherland,* 521 U.S. 151, 156 (1997) (holding a "new rule" either "breaks new ground," "imposes a new obligation on the States or the Federal Government," or was not "dictated by precedent existing at the time the defendant's conviction became final"). The rule asserted by Carter was not dictated by the precedent that existed at the time his conviction became final and, in fact, continues to be rejected by binding precedent. Therefore, Carter's second claim is barred the nonretroactivity doctrine of *Teague.*

Alternatively, Carter's claim may be denied on the merits. Carter has not shown that the state court's denial of his claim was unreasonable under 28 U.S.C., § 2254(d). Since this claim "has been previously rejected in both state and federal court, and is not supported by Supreme Court authority," *Scheanette v. Quarter-*

14

*man,* 482 F.3d 815, 828 (5th Cir. 2007) (footnote omitted), the state court properly denied the claim.

Carter's second claim is denied as barred by *Teague,* and alternatively for lack of merit.

**VI**

Finally, Carter complains that he was denied his rights under the Eighth and Fourteenth Amendments by the Texas statutory rule in capital-murder prosecutions requiring the jury to be instructed that punishment-phase special issues not be resolved in the defendant's favor unless at least ten jurors agree, and by the statutory prohibition against informing the jurors of the consequences of their failure to render a verdict. (Pet. Br. at 7, 32-38.) Respondent asserts that the claim lacks merit, that Carter cannot demonstrate that the state court's resolution of it is unreasonable, and that it is barred by the nonretroactivity doctrine of *Teague*. (Ans. at 60-68.)

Carter presented these complaints to the state court as his fourth and seventh points of error in his direct appeal (1 CR 211; 9 RR 22-231), and the state court denied such complaints on the merits. (*Carter v. State,* 2009 WL 81328, at *4.) Carter also presented a portion of this claim as his ninth claim in the postconviction habeas-corpus proceedings (1 SHCR 49-51), and the state court denied it on the merits (2 SHCR 149-50). (*Ex parte Carter,* 2010 WL 5232998, at *1.)

15

At the time of Carter's trial, Texas law required all twelve jurors to be unanimous in returning a verdict on special issues that would result in a death sentence, but allowed them to return a verdict on certain special issues that would result in a life sentence with the agreement of only ten jurors. *See* TEX. CODE CRIM. PROC. art. 37.071 §§ 2(a)(1), (g). This requirement has been referred to as the "10-12" Rule, *Carter v. State,* 2009 WL 81328, at *4; *Blue,* 665 F.3d at 662, and the "12-10" Rule. *See Druery v. Thaler,* 647 F.3d 535, 542 (5th Cir. 2011).

Carter asserts that this requirement, in conjunction with the prohibition on informing the jury of the consequence of their failure to render a verdict, is unconstitutionally misleading to jurors. (Pet. Br. at 32,36-38.) He argues that the jury charge deliberately created a misunderstanding of the legal consequences that would follow from unreconciled differences of opinion between jurors, with the manifest purpose of coercing jurors who hold a minority view on the mitigation special issue into changing their position for the sake of reaching a verdict, in violation of the principles announced in *Mills v. Maryland,* 486 U.S. 367 (1988), *Romano v. Oklahoma,* 512 U.S. 1, 8 (1994), and *Caldwell v. Mississippi,* 472 U.S. 320 (1985). (Pet. Br. at 33-34, 36.) These arguments have also been rejected by binding circuit precedent.

In *Miller v. Johnson,* 200 F.3d 274, 288 (5th Cir. 2000), the court of appeals noted that circuit precedent at that time already

16

foreclosed this reading of *Mills*, which really only required all jurors be allowed to consider any circumstance that they regarded as mitigating. The court of appeals observed that "[u]nder the Texas system, all jurors can take into account any mitigating circumstance. One juror cannot preclude the entire jury from considering a mitigating circumstance." *Id.* at 288-89. This was repeated in *Druery v. Thaler,* in which the court of appeals again cited circuit precedent in rejecting the claim "that Texas's 12–10 Rule violated due process and the right to freedom from cruel and unusual punishment." 647 F.3d at 542 (citing *Hughes v. Dretke,* 412 F.3d 582, 593–94 (5th Cir. 2005)); *see also Blue,* 665 F.3d at 670 (rejecting same argument based on *Romano v. Oklahoma*).

The court of appeals in *Druery* also noted circuit precedent rejecting Carter's argument based on *Caldwell v. Mississippi* that the 10-12 Rule mislead jurors regarding the consequences of their actions. *See* 647 F.3d at 544 (citing *Jones v. United States,* 527 U.S. 373, 381 (1999) (holding that "the Eighth Amendment does not require that the jurors be instructed as to the consequences of their failure to agree")). The court of appeals observed that "12–10 Rules implicitly urge jurors toward consensus, but nothing in them suggests the ultimate responsibility to choose reposes in another actor." *Druery,* 647 F.3d at 544.

Respondent again properly asserts that this claim is barred by the nonretroactivity doctrine of *Teague.* (Ans. at 65-66.) Again,

17

the rule asserted by Carter was not dictated by the precedent that existed at the time his conviction became final, or even now. *See O'Dell,* 521 U.S. at 156. Therefore, Carter's third claim would rely upon a new procedural rule and is, therefore, barred by the nonretroactivity doctrine of *Teague*. *See Druery,* 647 F.3d at 542-45 (denying complaints against 12-10 Rule on similar arguments based on merits and *Teague*); *Blue,* 665 F.3d at 670 (same).

Carter's third claim has been repeatedly denied by binding circuit precedent. Therefore, this claim is denied as barred by *Teague,* and alternatively for lack of merit.

## VII

Carter's petition for a writ of habeas corpus is **DENIED**.

Considering the record in this case and pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing §§ 2254 and 2255 proceedings, and 28 U.S.C. § 2253(c), the Court **DENIES** a certificate of appealability. Based on its analysis of the claims, the Court finds that the petitioner has failed to show (1) that reasonable jurists would find this Court's "assessment of the constitutional claims debatable or wrong," or (2) that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

18

In the event he files a notice of appeal, Carter may proceed *in forma pauperis* on appeal.  *See* 18 U.S.C. § 3006A(d)(7).

SIGNED March 4, 2015.

                                                  TERRY R. MEANS
                                                  UNITED STATES DISTRICT JUDGE

TRM/rs